# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

TRAVIS GERALD STEED,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Petitioner,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　　**Case No. 13-CV-663-JED-TLW**
　　　　　　　　　　　　　　　　　　　)
TRACY MCCOLLUM, Warden,[1]　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Respondent.　　　　　　　)

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner Travis Gerald Steed is a state prisoner appearing *pro se*. Respondent filed a response (Doc. 6) and provided the state court record necessary for resolution of Petitioner's claims (Doc. 6, 7, 8). Petitioner did not file a reply. For the reasons discussed below, the petition for writ of habeas corpus is denied.

## BACKGROUND

On February 26, 2006, at 12:53 p.m., Catherine White (White) called 911 to report that she had found her fifteen-month-old daughter, M.W., dead. At the time, White, M.W., and Petitioner, White's boyfriend of seven months, were living at the Townsman Motel in Miami, Oklahoma, because Petitioner was working construction in the area. White's three older children lived with White's parents in Goodman, Missouri, about a 1-hour drive from Miami. On Saturday night, February 25, 2006, White traveled to Goodman to pick up her three children and bring them back to the motel in Miami. Because the heater in her vehicle was broken, White left M.W. with Petitioner at the motel in Miami. Although neither White nor Petitioner was sure of the precise

---

[1]　　　　Petitioner is in custody at North Fork Correctional Center where Tracy McCollum is Warden. Therefore, under Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*, Tracy McCollum, Warden, is the proper party respondent in this case and is hereby substituted as the respondent.

timing of the trip, cell phone records were used to establish that White left the motel at about 7 p.m. and returned, with her three older children, around 11 p.m.  Only Petitioner and M.W. were in the motel room from 7 p.m. to 11 p.m.  No evidence suggested that anyone else was present with M.W. during that time period.

The couples' cell phone records also demonstrated that, during the 7 p.m. to 11 p.m. time period, White contacted Petitioner 22 times and Petitioner contacted White 24 times.  As White returned to Miami, Petitioner asked her to detour to Arkansas to pick up methamphetamine from a dealer who had previously sold them the drug.  When White refused, Petitioner became angry, cursed at her and hung up on her.  As she neared Miami, White had another phone conversation with Petitioner.  White said that, during this last cell phone conversation, she could hear M.W. "fussing" in the background.  Upon her return to the motel, White plugged in her phone for recharging, then checked on M.W.  She saw that M.W. was lying face down in the playpen and that she was taking quick, short breaths.  White thought M.W. had cried herself to sleep.  White also checked M.W.'s diaper, found it to be dry, and covered her with a blanket.  Then, White went to the bathroom where she got in an argument with Petitioner.  According to White, Petitioner was in her face, yelling at her.  After watching television, White, Petitioner, and the three older children eventually slept.

White awakened around 5 a.m. on Sunday morning with abdominal pain.  She went to a store located across the street from the motel and bought tampons, Midol, and 4 croissants.[2]  When she returned to the motel room, White checked on M.W.  She noticed that M.W.'s position in the

---

[2]     Detective Todd Hicks investigated the scene and testified that food "crumbs" were found under M.W.'s cheek.  *See* Doc. 7-16, Tr. Vol. I at 227-28.  Defense counsel attempted to link the food "crumbs" to the croissants White purchased between 5 a.m. and 6 a.m.  *See* Doc. 7-17, Tr. Vol. II at 309.  However, White denied eating anything while standing over the playpen after she returned from the store.  *Id.* at 325.

playpen had changed since White last looked at her at about 11 p.m. and that M.W. was uncovered. White covered her and went back to bed. White next awakened around noon. She ordered food for her older children from the motel restaurant and Petitioner left the room to pick up the food. White then phoned her mother. Approximately 30 minutes after White awakened, she went to the playpen to wake up M.W. and found her dead. White said M.W. was cold and stiff. After finding M.W. dead, White called her mother again, then she called Petitioner who was still at the motel restaurant picking up food. She then called 911.

Later in the afternoon on Sunday, February 26, 2006, both White and Petitioner voluntarily went to the Miami Police Department and were interviewed separately. White testified that, after the interviews, she told Petitioner she wanted an autopsy to be performed, but that Petitioner said "no, we [do not] need one." White and Petitioner then went to White's parents' home in Goodman, Missouri, where they stayed together for two days. On Tuesday morning, February 28, 2006, Petitioner left Goodman, saying he "was going to Texas." That same day, White returned to Miami for a second interview, even though Petitioner had told her not to go because "they were going to throw [her] in jail and drug test [her]." Before returning to Miami and after Petitioner had left, White learned the results of the autopsy. Later that day, White called Petitioner to tell him about the autopsy results but left a message since he did not answer. White did not see Petitioner again after learning the autopsy results.

The Medical Examiner (ME) performed an autopsy and found that M.W. had a subdural hemorrhage resulting from a 5 1/2 inch long skull fracture. Her injuries were not consistent with an accident. According to the ME, the injury was caused by blunt impact, probably with a broad surface like a wall, floor, or the broad part of a 2 by 4, and would have caused unconsciousness,

either immediately or within a very short period of time.  Also, M.W.'s breathing could have been

erratic and "quick, short breaths" would be consistent with the injury.  Based on his findings, the ME

determined that M.W. died of blunt head trauma and that the manner of death was homicide.

Following an investigation, Petitioner was charged in Ottawa County District Court, Case

No. CF-2006-0081, with First Degree Child Abuse Murder.  Petitioner's first jury trial ended in a

mistrial after the jury was unable to agree on a verdict.  At the conclusion of Petitioner's second

trial, the jury found him guilty as charged.  The trial judge sentenced Petitioner, in accordance with

the jury's recommendation, to life imprisonment with the possibility of parole.  Attorneys L. Wayne

Woodyard and Kurt K. Hoffman, both from the Oklahoma Indigent Defense System (OIDS),

represented Petitioner at trial.

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals

(OCCA).   Represented by OIDS attorney William H. Luker, Petitioner raised the following

propositions of error:

> Proposition I:    The evidence produced at trial was insufficient to prove beyond a reasonable doubt that Appellant was responsible for the death of [M.W.].
>
> Proposition II:    The trial court committed reversible error by failing to provide the jury with instructions informing the jurors that Catherine White was an accomplice as a matter of law, and further informing them that a conviction could not be had upon her testimony unless it was corroborated.  Failure to instruct the jury on such crucial rules of law deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and Article II, § 7 of the Oklahoma Constitution.
>
> Proposition III:    The trial court's erroneous denial of Appellant's challenge for cause against prospective juror Candy Whitney deprived Appellant of his full complement of peremptory challenges to use at his discretion and prevented his ability to remove another objectionable juror.

Proposition IV:      The trial court committed reversible error by allowing the State to introduce evidence of Appellant's alleged solicitation for the purchase of methamphetamine, which had nothing to do with the offense charged, violating Appellant's rights under the Fourteenth Amendment to the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

Proposition V:       The trial court's exclusion of defense witness Danyeal Childers, who was to testify that Catherine White admitted to her that she had used methamphetamine on the night of her child's death, constituted reversible error under [the] Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article II, §§ 7, 9, and 20 of the Oklahoma Constitution.

Proposition VI:      Appellant was deprived of a fair trial by the prosecutor's theatrics with a styrofoam head which the prosecutor used to speculatively demonstrate the means by which the fatal assault was committed against the victim. This improper display violated Appellant's right to due process under the Fourteenth Amendment of the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

Proposition VII:     Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article II, §§ 7, 9, and 20 of the Oklahoma Constitution.

          A.      Trial counsel failed to preserve the record for appellate review by failing to request necessary jury instructions and by failing to comply with the procedures necessary to present a necessary defense witness.

          B.      Appellant received ineffective assistance of counsel for failure to adequately investigate and present additional evidence of innocence.

Proposition VIII:    The accumulation of error in this case deprived Appellant of due process of law and necessitates reversal pursuant to the Fourteenth Amendment to the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

(Doc. 6-1). In an unpublished Summary Opinion, filed February 18, 2011, in Case No. F-2009-22

(Doc. 6-3), the OCCA affirmed Petitioner's conviction and sentence.

5

Thereafter, represented by attorney Kevin Etherington, Petitioner filed an application for post-conviction relief in the district court. The state district court identified Petitioner's post-conviction claims, as follows:

1)      Petitioner was denied his right to a fair trial and due process of law guaranteed by the Fifth and the Fourteenth Amendments to the United States Constitution by the prosecutor's introduction of false testimony.

2)      Petitioner was denied his right to a fair trial and due process of law guaranteed by the Fifth and the Fourteenth Amendments to the United States Constitution by the prosecutor's failure to disclose evidence in violation of *Brady v. Maryland*.

3)      Petitioner was denied his right to a fair trial and due process of law guaranteed by the Fifth and the Fourteenth Amendments to the United States Constitution by the introduction of gruesome photographs of the infant victim in a state of rigor which had no probative value.

4)      Petitioner was denied his right to a fair trial and due process of law guaranteed by the Fifth and the Fourteenth Amendments to the United States Constitution where counsel failed to investigate evidence that Catherine White had another infant child that died and that she was subject of a child abuse investigation and further failed to object to the admission of gruesome photographs of the victim.

5)      Petitioner was denied his right to effective assistance of appellate counsel where counsel failed to raise on direct appeal the above referenced allegations of error.

6)      Petitioner is actually innocent and cumulative errors at trial and on direct appeal warrant collateral relief.

*See* Doc. 6-5 at 1-2. By Order filed August 24, 2012, the state district judge denied the application for post-conviction relief. *Id.* at 23. Petitioner filed a post-conviction appeal. By order filed September 9, 2013, in Case No. PC-2012-854, the OCCA affirmed the decision of the district court. *See* Doc. 6-7.

On October 7, 2013, Petitioner filed his *pro se* federal petition for writ of habeas corpus (Doc. 1). He raises the following grounds of error:

Ground 1:        Petitioner was denied a fair trial by the prosecutor's introduction of false testimony.

Ground 2:        Petitioner was denied a fair trial by the prosecutor's failure to disclose evidence in violation of *Brady v. Maryland*.

Ground 3:        Petitioner was denied a fair trial by the introduction of gruesome photographs of the infant victim, which had no probative value.

Ground 4:        Ineffective assistance of trial counsel.

*Id.* Petitioner attributes his failure to raise these claims on direct appeal to ineffective assistance of appellate counsel. *Id.* In response, Respondent asserts that Petitioner is not entitled to relief under 28 U.S.C. § 2254(d) on his claim of ineffective assistance of appellate counsel for failing to raise grounds 1-4 on direct appeal and that grounds 1-4 are procedurally barred. *See* Doc. 6.

### *ANALYSIS*

#### A.      Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). Respondent concedes, *see* Doc. 6 at 2 ¶ 5, and the Court agrees, that Petitioner fairly presented the substance of his claims to the OCCA on post-conviction appeal. Therefore, the Court finds that Petitioner exhausted state remedies for his claims as required by 28 U.S.C. § 2254(b).

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 184-85 (2011); *Williams v. Taylor*, 529 U.S. 420 (2000).

#### B.  Procedural bar (Grounds 1-3)

Petitioner presented Grounds 1-3 to the OCCA on post-conviction appeal. The OCCA imposed a procedural bar, finding as follows:

> The substantive issues Petitioner's [sic] asserts in propositions I, II and III of this matter could have been raised in his direct appeal.  All grounds for relief that could have been raised in previous proceedings but were not are waived and may not be the basis of a post-conviction application, unless the court finds sufficient reason why the grounds were not asserted or were inadequately raised in the prior application. 22 O.S.2011, § 1086; *Logan v. State*, 2013 OK CR 2, ¶ 3, 293 P.3d 969, 973.

(Doc. 6-7 at 3).

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds unless a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see Maes v. Thomas*, 46 F.3d 979, 985 (10th Cir. 1995); *Gilbert v. Scott*, 941 F.2d 1065, 1067-68 (10th Cir. 1991).  "A state court finding of procedural default is independent if it is separate and distinct from federal law." *Maes*, 46 F.3d at 985.  A finding of procedural default is an adequate state ground if it has been applied to "similar" claims evenhandedly "in the vast majority of cases." *Id.* at 986 (internal quotation omitted).

Applying the principles of procedural bar to this case, the Court finds that the OCCA's procedural bar, based on Petitioner's failure to raise his defaulted claims on direct appeal, was an independent ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding." *See Maes*, 46 F.3d at 985.  The OCCA based its decision solely upon Oklahoma rules and case law, including Oklahoma's Post-Conviction Procedure Act, Okla. Stat. tit. 22, § 1086.  In addition, the procedural bar was based on state law grounds adequate to preclude federal review. *See Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir.

2002) (holding a petitioner's failure to raise a claim in a prior application, as required by Okla. Stat. tit. 22, § 1086, "is an independent and adequate state ground for denying habeas relief").

Habeas review of Grounds 1-3 is precluded, therefore, unless Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and state officials' interference. *See id.* The fundamental miscarriage of justice exception to the doctrine of procedural bar is applicable only when a petitioner asserts a claim of actual innocence. *Herrera v. Collins*, 506 U.S. 390, 403-404 (1993); *Sawyer v. Whitley*, 505 U.S. 333, 339-41 (1992); *Schlup v. Delo*, 513 U.S. 298 (1995).

In his petition, Petitioner claims that appellate counsel provided ineffective assistance in failing to raise the substantive claims on direct appeal. "Attorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default." *Hickman v. Spears*, 160 F.3d 1269, 1272 (10th Cir. 1998). However, in order for an attorney's performance to constitute cause external to a petitioner, the attorney's performance must be constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Coleman*, 501 U.S. at 752-54. In Part C below, the Court addresses and rejects Petitioner's claim of ineffective assistance of appellate counsel. As a result, in this case, ineffective assistance of appellate counsel cannot serve as cause to overcome the procedural bar.

Also, Petitioner fails to demonstrate that federal habeas review is required under the fundamental miscarriage of justice exception. Nowhere in his petition does Petitioner claim to be actually innocent of the crime of which he was convicted. The Court recognizes that Petitioner raised a claim of actual innocence in his application for post-conviction relief. *See* Doc. 6-4 at 2, 10. Even if Petitioner continues to claim that he is actually innocent, he provides no new evidence to support the claim. Therefore, Petitioner does not fall within the narrow "fundamental miscarriage of justice" exception. *See Schlup*, 513 U.S. at 329 (petitioner has the burden of demonstrating "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt").

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claims are not considered, the Court concludes that Grounds 1, 2, and 3 are procedurally barred. *See Coleman*, 501 U.S. at 724. For that reason, Petitioner's request for habeas corpus relief on Grounds 1, 2, and 3 shall be denied.

## C.     Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Williams v. Taylor*, 529 U.S. 362, 402 (2000); *Neill v. Gibson*, 278 F.3d 1044, 1050-

51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  *See Bell v. Cone*, 535 U.S. 685, 699 (2002); *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002).  Further, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated Petitioner's claims of ineffective assistance of counsel on post-conviction appeal. *See* Doc. 6-7.  Therefore,  the § 2254(d) standard applies to this Court's analysis of Petitioner's claims of ineffective assistance of counsel.

Petitioner complains that appellate counsel provided ineffective assistance when he failed to raise grounds 1-4 on direct appeal.  In affirming the state district courts's denial of post-conviction relief, the OCCA applied *Strickland*, 466 U.S. at 687, and found that Petitioner had not established that the result of his appeal would have or should have been different had the underlying claims been raised.  *See* Doc. 6-7 at 3-5.

Petitioner is not entitled to habeas relief on these claims unless he demonstrates that the OCCA's adjudication was contrary to, or an unreasonable application of, *Strickland*.  When assessing claims of ineffective assistance of appellate counsel, this Court applies the *Strickland* two-pronged standard used for general claims of ineffective assistance of trial counsel.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).  When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue.  *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).  In *Cargle v. Mullin*, 317 F.3d 1196 (10th Cir. 2003), the Tenth Circuit directed that:

11

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

*Id.* at 1202 (citation and footnote omitted); *see also Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998).

The Court shall address each of the claims underlying Petitioner's claim of ineffective assistance of appellate counsel.

### 1. Prosecutor knowingly presented false testimony

First, Petitioner claims that appellate counsel provided ineffective assistance when he failed to claim that the prosecutor knowingly presented false testimony. *See* Doc. 1 at 5, 6. Petitioner explains his claim, as follows:

> [w]itness Catherine White was the mother of the deceased child. The witness testified under oath 3 separate times and gave 2 additional sworn statements to law enforcement regarding her knowledge of the incident. The witness accounts changed throughout her testimony, seemingly to conform with the State's evidence and theory of the case. The witness even admitted under oath to changing her story upon hearing the findings of the medical examiner. During her testimony at trial the prosecutor admitted into evidence phone records to colaborate [sic] her version of the incident. The very records that were admitted showed that her testimony was false and the prosecutor made no attempt to correct the falsity. Further, at sentencing, both the trial judge and the prosecutor expressed their concerns, on the record, of this witness' veracity during her testimony.

*Id.* at 5. In rejecting this claim on post-conviction appeal, the OCCA found as follows:

> Petitioner cites *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959) to argue his appellate counsel was ineffective for failing to argue his due process rights were violated when the prosecutor failed to correct false testimony presented at trial. Petitioner complains that White testified an Arkansas drug dealer kept calling her, even though White's phone records admitted as an exhibit at trial showed she had not received any incoming calls from Arkansas. Under *Napue* and

12

subsequent cases, a three-pronged test is used to determine if a defendant has been denied due process of law: (1) The status of a key part (witness or evidence) of the State's case was presented at trial with an element affecting its credibility intentionally concealed.  (2) The prosecutor knew or had reason to know of the concealment and failed to bring the concealment to the attention of the trial court.  (3) The trier of fact was unable properly to evaluate the case against the defendant as a result of the concealment.  As clearly shown by each prong of the test, a prosecutor's concealment of testimony or evidence is necessary for a due process violation to occur.  In this case, nothing was concealed by the prosecutor as defense counsel had access to White's telephone records and was able to compare such records to White's testimony.   The District Court correctly found that any inconsistency or misinterpretation of White's testimony could have been addressed on cross-examination.  Even if appellate counsel had raised this issue on appeal, the result of Petitioner's appeal would not have been different.

*See* Doc. 6-7 at 3-4 (citations omitted).

This Court agrees with the OCCA's assessment of the facts underlying this claim.  Petitioner does not rebut the OCCA's finding that defense counsel had access to the cell phone records at the time of trial.  As a result, that finding of fact is presumed correct.  28 U.S.C. § 2254(e)(1).  White's allegedly false testimony, that the Arkansas drug dealer kept calling her, could have been confirmed or refuted using White's cell phone records.  Those phone records had been provided to defense counsel and had not been concealed or undisclosed.  If White's testimony was not true, defense counsel had the records and could have used them to highlight the inconsistencies and contradictions in White's testimony during cross-examination.  The Court finds that Petitioner's underlying claim, that the prosecutor knowingly presented false testimony, lacks merit.  Petitioner cannot demonstrate that the result of his appeal would have been different had appellate counsel argued that the prosecutor knowingly presented false testimony.  Under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas corpus relief on this claim of ineffective assistance of appellate counsel.

13

### 2.  Prosecutor failed to disclose evidence

Next, Petitioner argues that appellate counsel provided ineffective assistance when he

omitted a claim that the prosecutor failed to disclose evidence in violation of *Brady v. Maryland.*[3]

*See* Doc. 1 at 7.  Specifically, Petitioner claims that:

> Witness Catherine White was the only witness to connect the Petitioner to the
> commission of the crime.  During her statements to police, authorizations for
> information were executed by Ms. White.  These authorizations were submitted to
> the Arkansas Department of Human Services and the Missouri Department of Social
> Services.  The documents obtained contained information that Ms. White had 3 other
> children that had died while in her care.  Ms. White had twins that died at birth.
> While this probably would not have been material at Petitioner's trial, reports
> regarding the third child would have.  Those records indicate a report made against
> Ms. White wherein she engaged in "blaming, verbal abuse, threatening" against a
> child victim.  This report was made 11 months before the death of the child victim
> the Petitioner has been convicted of killing.  These reports were never disclosed to
> [the] defense.  These reports most certainly would have been material to the
> Petitioner's defense.

*Id.*  On post-conviction appeal, the OCCA rejected this claim, finding as follows:

> Petitioner argues . . . that the District Court erred by failing to allow discovery and
> failing to conduct an evidentiary hearing regarding Petitioner's assertion that the
> prosecutor did not disclose evidence favorable to him.  Discovery is not part of post-
> conviction proceedings.  Petitioner has the burden to establish a material issue of
> fact.  He has not established that the District Court erred by finding he had not met
> his burden.  Petitioner has not established that if appellate counsel had raised this
> issue the result of his appeal would have been different.

*See* Doc. 6-7 at 4-5 (citations omitted).

The Court agrees with the OCCA's finding that Petitioner has failed to demonstrate that the

result of his appeal would have been different had appellate counsel raised this claim on direct

---

[3]     *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution
of evidence favorable to an accused upon request violates due process where the evidence is material
either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution")

appeal.  The Court notes that by Order filed February 21, 2007, the state district court authorized the delivery and review of juvenile records for all of White's children, including a child "whose gender or name is unknown," two children who were stillborn, as well as the victim in this case, and White's three surviving older children.  *See* Doc. 7-21, O.R. Vol. I at 94-95.  In addition, on April 25, 2008, the State filed a motion in limine requesting that the defense be prohibited from presenting testimony concerning a prior miscarriage suffered by Catherine White and the deaths of twins who were delivered stillborn at Freeman Hospital in Joplin, Missouri.  *See* Doc. 7-22, O.R. Vol. II at 254-55.  On May 2, 2008, the district court held a hearing on the parties' motions in limine.  *See* Doc. 7-13.  At that hearing, the district judge ruled that evidence of a stillborn child was inadmissible but that any evidence of prior child abuse by White was admissible.  *Id.* at 17-18.  Defense counsel did not dispute that the State had provided the defense team with all of the records that had been received, but expressed concern that other additional records may not have been provided by the Missouri Department of Human Services.  *Id.* at 19.  The prosecutor confirmed that all of the records received by the State had been provided to defense counsel.  *Id.*  Nothing in the record suggests that any records were withheld by the prosecution.  As a result, Petitioner's claim that the prosecution failed to disclose evidence lacks merit and Petitioner fails to demonstrate that the result of his appeal would have been different had appellate counsel raised this claim.  The OCCA's adjudication of this claim was not contrary to, or an unreasonable application of, *Strickland* and Petitioner is not entitled to habeas corpus relief on this claim of ineffective assistance of appellate counsel.

### 3.  Introduction of gruesome photographs

Petitioner also alleges that appellate counsel provided ineffective assistance when he failed to challenge the trial court's admission of gruesome photographs of the victim.  *See* Doc. 1 at 8, 9. Petitioner explains, as follows:

> Petitioner was convicted of the murder of a small child.  During the investigation the deceased child was photographed by law enforcement at the crime scene.  At trial the State admitted two photographs depicting the infant in a state of rigor, being posed in a standing position in the crib in which she was found dead.  The investigator testified the photograph was to show the infant's height in relation to the table next to the crib.  However, the infant's height in relation to the table was not material or relevant to any issue at the trial.  Nothing in these photographs served to establish the nature of the injuries, the corpus delicti of the crime, or the scene as it was found. On the contrary they were a depiction of the crime scene as staged by investigators. The admission of these photographs served as a gratuitous display of morbidity calculated to inflame the passions of the jury.

*Id.* at 8.  On post-conviction appeal, the OCCA rejected this claim of ineffective assistance of appellate counsel, again finding that Petitioner "has not established the outcome of his appeal should have been different."  *See* Doc. 6-7 at 5.

Petitioner fails to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of *Strickland*.  In *Grissom v. State*, 253 P.3d 969 (Okla. Crim. App. 2011), the OCCA addressed considerations applicable to photographic evidence and explained that:

> Photographic exhibits may be probative of the nature and location of wounds, may corroborate the testimony of witnesses, including the medical examiner, and may show the nature of the crime scene.  Gruesome crimes make for gruesome crime scene photographs, but the real issue is whether the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or needless presentation of cumulative evidence.

*Id.* at 989-90 (internal citations omitted).  In this case, the photographs were probative of the bruising observed on the victim's face,[4] corroborated the testimony of witnesses, including the medical examiner, and showed the nature of the crime scene.  Petitioner fails to establish that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.  Therefore, Petitioner fails to demonstrate that the result of his direct appeal would have been different had appellate counsel challenged the introduction of the photographs.  Under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas corpus relief on this claim of ineffective assistance of appellate counsel.

### 4. Ineffective assistance of trial counsel

Lastly, Petitioner claims that he received ineffective assistance of trial counsel.  *See* Doc. 1 at 10.  Specifically, he complains that trial counsel failed to file a "motion for specific discovery" requesting reports from the Arkansas Department of Human Services and the Missouri Department of Social Services concerning White's other children.  *Id.*  He further claims that trial counsel performed deficiently in failing to object to introduction of "gruesome photographs."  *Id.*  On post-conviction appeal, the OCCA acknowledged Petitioner's claim that "the trial court's findings that Petitioner received effective assistance of trial and appellate counsel was predicated on the court's erroneous conclusions regarding the merits of the underlying substantive claims."  *See* Doc. 6-7 at 2.  However, the OCCA found that Petitioner failed to establish that the district court erred in denying relief.  *See id.* at 2-3.

---

[4]      Detective Hicks testified that he saw bruising on M.W.'s face and that he held M.W. up to compare her height to the height of the table located 1-2 inches away from the playpen.  *See* Doc. 7-16, Tr. Vol. I at 210-12, 226.  Thus, the photographs were relevant to determining a possible cause of the bruises observed on M.W.'s face.

To be entitled to habeas corpus relief on his underlying claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of the claim was an unreasonable application of *Strickland*. Under *Strickland*, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland*, 466 U.S. at 687; *Osborn v. Shillinger*, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. *Strickland*, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002); *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. *Strickland*, 466 U.S. at 700. Thus, it is not always necessary to address both *Strickland* prongs. This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." *Pinholster*, 563 U.S. at 190 (noting

18

that a habeas court must take a "highly deferential" look at counsel's performance under *Strickland* and through the "deferential" lens of § 2254(d)).

As to Petitioner's claim that trial counsel provided ineffective assistance in failing to object to the admission of photographs of the victim being held in a standing position in the playpen, Petitioner cannot satisfy the *Strickland* standard.  As discussed above, in Part C(3), the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice. Therefore, trial counsel did not perform deficiently in failing to object.  Petitioner's claim of ineffective assistance of trial counsel for failing to object is without merit and appellate counsel did not provide ineffective assistance in failing to raise a meritless claim.

As to Petitioner's claim that trial counsel provided ineffective assistance in failing to file a specific motion for discovery to obtain reports from the Arkansas Department of Human Services and the Missouri Department of Social Services concerning Ms. White's other children, the Court finds that Petitioner cannot satisfy the *Strickland* standard.  The record reflects that, on February 21, 2007, trial counsel filed a "petition for order authorizing the delivery, inspection, release, and disclosure of juvenile records." *See* Doc. 7-21, O.R. Vol. I at 96-101.  The district judge granted the motion. *Id.* at 94-95.  In addition, on March 8, 2007, trial counsel filed an extensive amended motion for discovery. *Id.* at 106-124.  The record also reflects that documents from the Missouri Department of Social Services regarding White's children were provided to defense counsel. *Id.* at 192, 193, 196.  Nothing in the record suggests that trial counsel should have undertaken further efforts to obtain more documents or that had counsel taken additional steps, the result of Petitioner's trial would have been different.  This claim of ineffective assistance of trial counsel lacks merit and appellate counsel did not provide ineffective assistance in failing to raise a meritless claim.

In summary, and based on a thorough review of the record, the Court finds that the OCCA did not unreasonably apply *Strickland* in denying Petitioner's claims of ineffective assistance of appellate counsel. Petitioner is not entitled to habeas corpus relief on this claim of ineffective assistance of appellate counsel under 28 U.S.C. § 2254(d).

**D.  Certificate of appealability**

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason. *See Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required

showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds is debatable.  A certificate of appealability shall be denied.

### *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.   The Clerk of Court shall note on the record the substitution of Tracy McCollum, Warden, as party respondent in this case.

2.   The petition for writ of habeas corpus (Doc. 1) is **denied**.

3.   A separate judgment in favor of Respondent shall be entered in this matter.

4.   A certificate of appealability is **denied**.

ORDERED THIS 20th day of October, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE